STEPHENS (McLAUGHLIN v.). See Case No. 8,874.

---

## Case No. 13,369.

### STEPHENS et al. v. SALISBURY.

[1 MacA. Pat. Cas. 379.]

Circuit Court, District of Columbia. May, 1855.

PATENTS—APPLICATIONS—SUFFICIENCY OF SPECIFICATIONS — INTERFERENCE PROCEEDINGS — PRIORITY OF INVENTION—VERBAL DECLARATIONS — REDUCTION TO PRACTICE—LACHES.

[1. The model and drawings filed with the specifications are to be taken together in explanation thereof, and the construction given to the specifications should not be too strict and technical. They will therefore be held sufficiently definite if, when thus construed and explained, it appears that the invention has been communicated to the public so that a skillful workman would be able to carry it into execution.]

[2. Mere verbal declarations and explanations of the inventor are competent evidence as part of the res gestæ, and from the necessity of the case, to give date to an invention, and may be sufficient for the purpose without drawings or model, when the invention is of great simplicity, and the time is not so long as to make the recollection improbable. Philadelphia & T. R. Co. v. Stimpson, 14 Pet. (39 U. S.) 462, followed.]

[3. It is not necessary, in order to prevent a subsequent inventor from obtaining a patent, that the invention should have been put in practical use, or even, in all cases, that drawings or a model shall have been made: but, if the first inventor has made it known, even by verbal description, so that a person skilled in the art would be able to apply it, his right will be preserved, if he uses reasonable diligence in applying for a patent.]

[4. When both parties to an interference are mere applicants, neither having obtained a patent, lapse of time is immaterial, except where it is sufficient, with other circumstances, to show an abandonment of the invention.]

[This was an appeal by Robert S. Stephens and Robert S. Van Rensalaer from a decision of the commissioner of patents in an interference proceeding, awarding priority to Elam C. Salisbury in respect to an invention relating to railroad cars.]

The rules of the office referred to in the decision were as follows (rules of 1855):

"What will Prevent the Grant of a Patent.

"(5) Even although the applicant has in good faith actually made an invention, a patent therefor will not be granted him if the whole or any part of what he claims as new had before been patented or described in any

printed publication in this or any foreign country, or even if it had before been invented or discovered in this country (Act 1836, § 7 [5 Stat. 119]), or if he has once abandoned his invention to the public, or if with his consent and allowance it has been for more than two years in public use or on sale. Act 1836, § 6; Act 1839, § 7 [5 Stat. 354].

"(6) The mere fact of prior invention or discovery abroad will not prevent the issue of the patent, unless the invention has been there patented or described in some printed publication. Act 1836, § 7; also Act 1836, § 15.

"(7) Merely conceiving the idea of an improvement or machine in this country is not such an 'invention' or 'discovery' as is above contemplated. The invention must have been reduced to a practical form, either by construction of the machine itself or of a model thereof, or at least by making a full drawing of it, before it will prevent a subsequent inventor from obtaining a patent. See Heath v. Hildreth [Case No. 6,309]; and Perry v. Cornell [Id. 11,001] decided by Judge Cranch on an appeal from the commissioner."

The patent issued to Elam Salisbury, No. 13,364, July 31st, 1855. For diagram, see Pat. Off. Rep. 1855, p. 169.

F. Sheppard, for Stephens and Van Rensalaer.

(1) The case of Salisbury does not conform to rule 7 of the rules of the office, inasmuch as the alleged invention was "never reduced to a practical form, either by the construction of the machine itself or of a model thereof, or at least by making a full drawing of it;" and the reason assigned by the commissioner for dispensing with that rule in this case is insufficient, because the invention in question consists of a material structure or arrangement, the means of which depend upon the connections, adjustments, and fitness of all the parts with reference to each other, and upon other elements, which can no more be determined a priori in this case than in the usual cases of mechanical structure to which the office applies the rule.

(2) Mere suggestions, never depicted in drawings or reduced to form in a model or machine, cannot prejudice the rights of a diligent and independent inventor who has reduced his speculation to practice, developed the experiment into discovery, and perfected that discovery by patient and continued experiments; who has not only "proposed" the thing, but has actually accomplished the result himself, and shows others how to do it. Carpenter v. Smith, Webst. Pat. Cas. 534; Galloway v. Bleaden, Id. 525; Norm. Pat. 28; Reed v. Cutter [Case No. 11,645]; Bedford v. Hunt [Id. 1,217]; Curt. Pat. §§ 43, 47; Goodyear v. Day, 2 Wall. [69 U. S.] 299.

MORSELL, Circuit Judge. In the case as tried before the commissioner. there was included in the interference another party, namely, Henry Waterman, but in considering the proofs in the case it was thought that he was improperly brought in, and there is no appeal as to him.

There have been various reasons of appeal filed, the most material of which is to be found under the third general head, which I purpose first to consider. The general proposition is that the commissioner erred in deciding the question of priority in favor of the appellee, Elam C. Salisbury. The substance of the particular reasons under this head is: First. Because his case does not conform to the rules of the office as published (rule 7), inasmuch as the alleged invention was never reduced to a practical form, either by the construction of the machine itself, or of a model therefor, or at least by making a full drawing of it. The second is as to the effect of William Davis' testimony—that it does not disclose a practicable invention or discovery which, under the law and the circumstances of this case, can interfere with the rights of the appellants, who commenced in 1848 or 1849 to develop their invention by actual trials and experiments. Third. That the appellants are original and independent inventors, who have really offered the invention to the public in a material, practicable, and useful embodiment; against such, the prior mental speculations of ingenious men, and their verbal suggestions, which have remained undeveloped for years, and have never taken a determinate form and shape, cannot legally avail, and ought not to, on the ground of public policy; they are not patentable. Fourth. The testimony of Davis is also impeached; also because the specification is insufficient, being vague and indefinite.

This last objection lies, as it were, at the threshold of the controversy, and must be first noticed. It is stated to consist principally in the omission to describe the kind of fixtures by which the shield is to be attached to the cars securely; and that as to the connections of the ends of the cars and the platforms, no way of effecting them is stated. With the specification a drawing containing a particular description of the appellee's plan, and to which he refers, and also a model thereof, were filed. These are to be taken together in explanation of the specification. The construction which ought to be given to the specification should not be too strict and technical. The proper inquiry is, has the specification substantially complied with that which the public has a right to require; has the appellee communicated to the public the manner of carrying his invention into effect, so that a skillful workman can carry into execution the plan of the inventor? The commissioner has thought it was sufficient; and I think it is to be gathered from the evidence in the cause that it was thought so by skillful engineers, and particularly in its application on the Hudson River Railroad in the month of June, 1853.

With respect to the other objections, the

closing argument of the appellee before me has reduced the points to precise and specific limits. The appellant says: "The appellee admits the priority of the appellant in the practical reduction of the invention, but contends that his rights are saved notwithstanding, because he has shown that he was using due diligence in adapting and perfecting his invention. He brings the whole controversy down to this simple issue, and submits his case upon the decision of that issue; and we (say the appellants) are willing to accept the issue thus offered, and let the case be decided according as that shall be determined." The argument thence proceeds to deny in point of fact that the evidence shows that due diligence has been used, or if it does in point of law, it is inapplicable; that the only provision on the subject of due diligence is in the fifteenth section of the act of 1836, which is intended to apply to a case of a patentee's surreptitiously or unjustly obtaining a patent for that which was in fact invented or discovered by another, who was using reasonable diligence in adapting and perfecting the same; that the thing must be reduced to a practical and useful form—and this only constitutes the kind of invention of which the law will take cognizance, and with which it can deal; that it is immaterial what inchoate attempts or intellectual notions Salisbury was using due diligence to perfect. His conversations do not constitute invention or discovery in the legal and statutory sense of the terms, and they do not any the more constitute it because Salisbury was in the meantime using due diligence to bring himself up to that standard. It is further contended that the appellants are bona fide, independent inventors, and not such as the statute was intended to apply to; and that the ultimate object of the patent system is utility and public good. The law will grant the patent to him who first utilizes the conception, embodies it into a practical form, and offers it to the public.

For the purpose of examining the correctness of the positions stated in the aforegoing argument, and on which the event of this decision must depend, a brief view will be taken of the provisions of the act of 1836, before alluded to, and some of the settled principles of patent law. The appellant has referred to the seventh rule of the patent office, requiring the invention to be reduced to practice, as a test by which the inventor's right to receive a patent is to be determined. Without giving any opinion as to the operation or validity of this rule, it is proper to say that the acts of congress on the subject must be always looked to, and that whatever principle is not comprehended in their provisions is not to be depended on. The monopoly thereby given was intended to be for the mutual benefit of the particular inventor and the public. Section 6 of the act of congress of 1836 (chapter 357) declares that before any inventor shall receive a patent for any such new invention or discovery he shall comply with the prerequisites therein declared. He shall file a written specification in such full, clear, and exact terms as to enable any person skilled in the art or science to which it appertains to make, construct, compound, and use the same, together with appropriate drawings and models and the oath of the party that he verily believes that he is the original and first inventor or discoverer of the art, machine, &c. The application thus prepared is submitted to the commissioner for his examination as to the novelty and utility of the invention; and on his being satisfied thereof, a prima facie right is established, and the commissioner is directed to issue letters-patent accordingly to the applicant for the invention. Let it be remarked that there is no express requirement that the applicant shall reduce his invention to actual use before he can obtain a patent; nor is there any time limited within which he is to disclose his invention before application for a patent. The inventor is allowed a reasonable time to mature his invention. This must depend upon circumstances; and his right can be affected by no lapse of time short of that which will be sufficient to show an abandonment of his claim, during which time no subsequent inventor, however original or bona fide, can deprive him of his priority. The eighth section provides for the case of interference which the commissioner is authorized to declare, if in his opinion it exists between the applicant's invention and any other patent for which an application may be pending, or with any unexpired patent which shall have been granted. In this proceeding the issue is priority of invention, to be tried before the commissioner, for which purpose he may direct the parties to take their proof as in this case; on which occasion the evidence objected to as insufficient by the appellant was taken and submitted, which objections will be now considered, viz., the propositions as to the conversations of the appellee as proving the actual reduction of the invention to practice or use, and the want of due diligence.

What measure of proof might be requisite to show the date of an invention or an issue of this kind depends upon the nature of the invention, the capacity of the witnesses, the distance of time when the facts occurred, and whether the invention was complicated, of many parts, contrivances and devices. In such cases mere verbal description would be very uncertain, and would need drawings or models at the time, and might be insufficient to establish the priority of invention and its date; but neither of these objections existed in this case; the invention was of great simplicity, and the time not so long as to make the recollection improbable. The commissioner says: "This seems one of those cases in which an idea of the invention

can be communicated by oral description, without a drawing or model. Generally it is held that either a drawing or a model is indispensable to give date to an invention; but in this case the description would be quite as intelligible without a drawing or model as with one, so far as the general plan is concerned. I should therefore suppose that such description was sufficient." The proof of the invention and time, it is true, consisted of the appellee's own verbal declaration; but it was made to several of the witnesses, accompanied with the effort and desire that permission should be given and an opportunity afforded him of having the same tried on railroad cars over which they were supposed to have control, and to persons who thought the description full and clear enough to enable them to make the application, which was actually done in the year 1853. These efforts were constant from the year 1846 up to the time when it was effected. With respect to such verbal declarations being competent for the purpose, I suppose the necessity, from the nature of the subject, and being, as it were, a part of the res gestæ, ought to be considered as making them so. The rule is very fully and clearly laid down in the opinion of the supreme court in the case of Philadelphia & T. R. Co. v. Stimpson, 14 Pet. [39 U. S.] 462. The judge, in stating the opinion of the court, says: "In many cases of inventions it is hardly possible in any other manner (speaking of the verbal declarations of the party inventor) to ascertain the precise time and exact origin of the particular invention. The invention itself is an intellectual process or operation; and, like all other expressions of thought, can in many cases scarcely be made known except by speech." Again: "His conversations and declarations stating that he had made an invention, and describing its details and explaining its operations, are properly to be deemed an assertion of his right at that time as an inventor to the extent of the facts and details which he then makes known, although not of their existence at an antecedent time. In short, such conversations and declarations, coupled with a description of the nature and objects of the invention, are to be deemed a part of the res gestæ, and legitimate evidence that the invention was then known to and claimed by him, and thus its origin may be fixed at least as early as that period." I should suppose, therefore, that it cannot be doubted that such verbal descriptions, without drawing or model, must be considered admissible for the purpose of proving priority of invention. Next, as to the part of the proposition relating to the necessity of reducing the invention to actual practice or use, I consider the doctrine as laid down by Judge Cranch in the case of Heath v. Hildreth [supra], and Perry v. Cornell [supra], as settling and establishing the point—and to that effect I

have expressed myself on several occasions before this—in the latter of which cases the judge says: "There is no law requiring the applicant to reduce his invention to actual use before he can obtain a patent. An inventor has reduced his invention to practice when he has so described it on paper with such drawings or models as to enable any person skilled in the art to make and use the same. He must show that it is practicable, and the manner in which it may be used; but it is not necessary that he should do this until he has perfected his invention and is ready to apply for a patent. He may have conceived the idea years ago, but is not obliged to furnish drawings or model until he makes his application. In the present case the specifications and drawings and models have been filed, showing the invention to be practicable and the manner in which it can be used." If, however, the case should occur where such evidence was not satisfactory, as before intimated, it might be necessary to show the same by proof of actual successful experiments.

As to the subject of diligence, provided for by the fifteenth section of the statute, it has application to the case of a prior inventor by way of defense, where a subsequent inventor has obtained a patent for the same invention surreptitiously and directly only in such a case, or where it has appeared that analogous principles are involved, and then by an equitable construction of the rule. But in this case both parties were applicants for a patent. I think the only rule which would be applicable in a case like the present would be from lapse of time, which, with other circumstances, would be sufficient to show an abandonment of the invention. There is no such ground pretended in this case. There are other reasons of appeal, but it is supposed the views I have taken will make it unnecessary particularly to notice them.

The conclusion to which I am brought is that the ground taken in the appeal cannot be supported, and that the decision of the commissioner ought to be affirmed; and I do accordingly hereby affirm the same.